CHARLES F. LANG et al.

*vs.*

EDWIN M. WILMER.

*Scire facias: proceeding in rem; terre tenants; judgment not personal. Judgments: limitations; not suspended by death of debtor, or failure to administer.*

Where a judgment debtor dies leaving leasehold property, if the judgment is revived by a *scire facias* against his next of kin as *terre tenants,* without making the administrator a party, the *scire facias* is a proceeding *in rem,* and the judgment obtained is not a personal judgment against them, but one subjecting the property in their possession which belongs to the debtor to the payment of the debt; and proceedings to enforce the judgment must contain a specific description of the property.      p. 226

The statute of limitations begins to run as to judgments from the date of the judgment, and is not suspended by the death of the judgment debtor, or the neglect of those entitled to obtain administration on his estate.                          p. 227

*Decided June 28th, 1917.*

Appeal from the Circuit Court of Baltimore City (STUMP, J.).

The facts are stated in the opinion of Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Wm. L. Stuckert,* for the appellants.

*David Ash,* for the appellee, submitted the cause on his brief.

THOMAS, J., delivered the opinion of the Court.

The bill of complaint in this case, which was filed by the appellee "in his own right and on behalf of all creditors of the respective defendants, who may come in and share the costs of this cause," against the appellants, Charles F. Lang and Henrietta V. Lang, his wife, Albert Lang, August Lang and the Ninth West Columbia Building Association of Baltimore City, alleges (1) that the appellee obtained a judgment by confession against Charles Lang for the sum of $59.97, and costs, with interest from May 31st, 1901, which was duly recorded on June 2nd, 1901, in the Superior Court of Baltimore City.　(2) "That on or about the 3rd day of November, 1890, a conveyance was recorded among the Land Records of Baltimore City in the office of the Superior Court in Liber J. B. No. 1317, folio 100, etc., of a certain leasehold property known as No. 764 St. Peters street, from Charles Lang, grantor, to Charles Lang and Maria Lang, his wife, grantees—said conveyance containing these words— 'grants unto Charles Lang and Maria Lang, his wife, their personal representatives and assigns' * * * 'To have and to hold the said described lot of ground and premises unto and to the use of said Charles Lang and Maria Lang, his wife, and unto the survivor's personal representatives and assigns.' "　(3) That Charles Lang died intestate on the 7th of September, 1906, "leaving no real or leasehold property or interest in other than his interest in the property referred to in paragraph two"; that his said widow and his next of kin "defaulted as to an administration" on Charles Lang's estate, but that Maria Lang assumed possession of the "entire estate" in the leasehold property, No. 764 St. Peters street, as her own property, and so dealt with it as stated in paragraph 4 of the bill.　(4) That immediately prior to the death

of Maria Lang, on September 23rd, 1907, she attempted to convey the property, by deed dated the 19th of September, 1907, and duly recorded among the Land Records, etc., to her son, Charles F. Lang, and Henrietta V. Lang, his wife, "by the entireties." (5) That on September 19th, 1907, Charles F. Lang and his wife executed a mortgage of said leasehold property, which was duly recorded, to the Ninth West Columbia Building Association of Baltimore City to secure the payment of $800.00. (6) That the plaintiff is advised that the conveyance to Charles Lang and Maria Lang, his wife, "passed nothing; or if anything at all, only an indetermined moiety interest in said leasehold property to Maria Lang, and not a survivorship in the whole property, which according to the terms of said conveyance gives the said leasehold property to the 'survivor's personal representatives and assigns.'" (7) That he, the plaintiff, on the 8th of February, 1907, "recovered a judgment *fiat executio*," on his said judgment, "against Maria Lang, Albert Lang and Charles F. Lang, personal representatives of Charles Lang, deceased, and said judgment *fiat* was duly recorded on or about the 9th of April, 1907, in the Superior Court of Baltimore City." (9) That so far as the plaintiff knows, the surviving children of Charles Lang and Maria Lang are Charles F. Lang, Albert Lang and August Lang. (10) "That your orator is a judgment *fiat* creditor of said Maria Lang, now deceased, and of Charles F. Lang and Albert Lang, as aforesaid; and that he is a judgment *fiat* creditor of August Lang in the sum of $13.05, with interest from the 20th day of April, 1903, and costs $2.60, and counsel fee of ten dollars, with waiver of all exemption and other laws, which judgment has been duly recorded in the Superior Court of Baltimore City in Magistrate's Judgment Records, Liber S. C. L. No. 71, folio 550, etc.; and that he is, also, a judgment creditor of Henrietta V. Lang, the wife of Charles F. Lang, in the sum of $32.49 with interest from September 29th, 1908, and costs $4.23 and $.25 recording fees, duly

recorded in the Superior Court of Baltimore City in Magis-
trate's Judgment Records, Liber S. C. L. No. 52, folio 306,"
etc.   (11) "That your orator's respective judgment liens
aforesaid are liens upon the estate of Charles Lang, deceased,
in the said leasehold property No. 764 St. Peters street, as
well as liens upon any part or share of said property claimed
by or otherwise distributable to any of said judgment debtors
aforesaid."   (12) That the plaintiff is without an adequate
remedy at law.

The bill prayed the Court, (1) to decree that said lease-
hold property No. 764 St. Peters street "is subject to the
liens of the respective judgment debts of said respective per-
sons, due to your orator, and to other creditors who may
come in to this cause, as aforesaid, by the priorities."   (2)
"That the aforesaid deed of conveyance from Charles Lang
to himself and Maria Lang, his wife, be decreed to be null,
void and of no effect to pass a joint estate nor an estate by
entireties."   (3) That the deed of said property from Maria
Lang to Charles F. Lang and Henrietta V. Lang, his wife,
be decreed to be null and void.   (4) That the mortgage to
the Building Association be declared void except as to the
share or interest of Charles F. Lang in said leasehold prop-
erty.   (5) That the "Court take jurisdiction of said lease-
hold property * * * and appoint a trustee to sell" the same,
"and that the proceeds be distributed under the direction of
the Court, to such persons as may be entitled thereto."

Charles F. Lang and Henrietta V. Lang, his wife, and the
Building Association demurred to the bill on the following
grounds:  (1) that the plaintiff had not stated such a case as
entitled him to any relief against them;  (2) that the plain-
tiff had an adequate remedy at law, and (3) that the judg-
ments referred to in the bill were barred by the statute of
limitations.   This appeal is from the order of the Court
below overruling the demurrer.

The averments of the bill are very indefinite, but appar-
ently the theory upon which the bill was filed is that the

deed of November the 3rd, 1890, from Charles Lang to Charles Lang and Maria Lang, his wife, was either totally void, or was only effective to convey to Maria Lang an undivided one-half interest in the property mentioned.

The deed is not set out in full in the bill or filed as an exhibit, but judging from the part of the premises and the *habendum* quoted in the bill, it is clear that if the property had been so conveyed by a third person to Charles Lang and Henrietta V. Lang, his wife, the grantees would have held the property as tenants by the entireties, not only because the conveyance was to them jointly, but because the *habendum* clearly indicates that the survivor was to take. *Craft* v. *Wilcox,* 4 Gill, 504; *Marburg* v. *Cole,* 49 Md. 402; *Fladung* v. *Rose,* 58 Md. 13.

It is said in 13 Cyc. 527: "A person can not convey to himself alone, and if he makes a conveyance to himself and others the latter only will take as joint tenants." In support of the text, the author cites *Camerson, Marshall & Barnett* v. *Steves,* 9 New Brunsw. 141. The same case is referred to in Note 1, page 109 of Volume 9, *Am. & Eng. Ency. of Law,* where it is said: "In *Cameron* v. *Steves,* 9 New Bruns. 141, it was held that a man can not convey land to himself, and therefore a deed from A. to B., C. and himself, and their heirs, being inoperative as to A., vested the whole estate in B. and C. as joint tenants. Delivering the opinion of the Court, Carter, C. J., said: 'It is laid down in *Perkins,* that a feoffment, with livery from A. to A. and B., vests the whole estate in B., for A. could not make livery to himself; therefore, by virtue of the livery to B., he became enfeoffed of the whole.' The reason of this case would not seem to apply equally to statutory conveyances where no livery is required, and it may be doubted whether a man could enfeoff another of an undivided share of an estate to be held with the feoffor. But there is another principle which would seem applicable to this case, under which the whole estate would vest in Cameron and Marshall. In *Sheppard's Touchstone*

(a book of very high authority), at page 82, it is laid down: 'If a deed be made to one that is incapable, and to others that are capable, in this case it shall enure only to him that is capable. (And if they were to be joint tenants, the person who is capable shall take the whole; but if they were to be tenants in common, he shall have only his particular share.)' "

In the case of *Bassett* v. *Budlong,* 18 Am. St. Rep. 404, which was an action of ejectment to recover certain lands, William H. Budlong, the owner of the fee in the property, executed and delivered to his wife, Annette Budlong, a quit claim deed, by which he purported to convey the property to her, her heirs and assigns forever. Following the *habendum* clause of the deed was the following proviso: "Provided always, and this indenture is made (in all respects) upon these express conditions and reservations, that is to say: 1. It is reserved that said party of the second part shall not, at any time during the lifetime of the said party of the first part, convey to any person or persons, by deed, mortgage, or otherwise, the whole or any part of the said premises, as above described, without the written assent of the said party of the first part, or his joining in such conveyance. 2. It is further reserved that in case of the decease or death of the said Annette Budlong, party of the second part, at any time before the decease or death of the said William H. Budlong, party of the first part, then in such case, and upon such decease, the said premises, as above described, with all and singular hereditaments and appurtenances thereunto belonging or in any way appertaining shall forthwith, upon such decease, revert back unto the said William H. Budlong, of the first part, and to his assigns forever."

Budlong's wife died in April, 1886, and he died in June of the same year. Previous to his death he devised the land so conveyed to Bertha M. Budlong and Bassett, a brother, and Beeman, a nephew of Annette Budlong, her only heirs at law, brought the suit. The Circuit Court held that the plaintiffs were entitled to recover, but the Michigan Supreme

Court reversed the judgment, and in the course of its opinion said: "Every deed or contract in writing is supposed to express the intention of the parties executing it, and when the object or purpose of such deed or contract is called in question in a court of justice, the first inquiry is, 'What is the intention of the parties, as expressed in the written instrument?' It is very plain, upon the face of the instrument, that Mr. Budlong did not intend to convey to his wife the title to the premises in fee simple absolute. She was precluded from conveying in any manner the premises described without his written assent, or joining in the conveyance; and if she died before he did she was to have no further interest in the land. If he died before she did, then the title in fee simple absolute should pass and become vested. Such is the apparent intention of the parties, as expressed in the deed. It is the duty of the Court to so construe the instrument as to carry out the intent of the parties making it, if no legal obstacle lies in the way. * * * We do not think it is necessary to resort to the surrounding facts and circumstances in order to discover the intent of the parties. If, however, we look to the surrounding facts and circumstances, we find them all affording evidence of the intent expressed in the instrument. * * * When it is considered that he was a farmer and a householder, and continued his residence upon the premises until his death, and retained the use and enjoyment of his personal property, it is evident that by executing the deed to his wife he did not intend to part with the title to his real estate unless the contingency should occur of his dying before his wife died. That event did not occur, and the estate never vested in his wife. The condition in the deed that his wife should not convey or mortgage the land without his written assent or joining in the deed, is a clear indication that the title should not pass, because if it was the intention that it should pass, and the estate vest in his wife, the condition would be nugatory, and no force or effect be given to this part of the instrument. To hold

that the title did pass by the absolute words of the granting clauses would violate that rule of construction which requires that every portion of the instrument should be given effect according to the intention of the parties. When we consider the intimate relation of the parties to the instrument—that of husband and wife—the effect of the arrangement entered into was that the title of the real estate should in the event of the death of either, go to the survivor. Doubtless, a simpler way to accomplish the object would have been for them to have united in a deed to a third party, and for him to have conveyed to them jointly, and then, under the statute, the survivor would have succeeded to the whole title and estate."

In the case of *Pegg* v. *Pegg,* 33 L. R. A. N. S. 166, Davis Pegg conveyed to his wife, Mary C. Pegg, "an undivided one-half interest" in and to two parcels of land. In the deed, between the granting and *habendum* clauses, there was inserted the following clause: "The object and purpose of this deed is to convey to said second party such an interest in said land that the parties hereto will have an estate in entirety, and that the same shall survive and vest in the survivor as the full and complete estate." Davis Pegg died and his wife claimed the property on the theory that she and her husband owned it as tenants by the entirety, while the children and grandchildren of Davis Pegg insisted that the grantor and grantee were tenants in common, and that upon the death of Davis Pegg his one-half interest in the property descended to them. In disposing of the case the Michigan Supreme Court said: "Davis Pegg conveyed an undivided one-half interest in said premises to complainant. He retained an undivided one-half interest therein. After this was done, they had distinct titles, and were therefore tenants in common. The title remained that way until Davis Pegg died. The question is, then, What became of his undivided half? Ordinarily, it would descend to his heirs, the defendants; and it did so descend, unless the clause which was in-

serted carried it in a different direction. Complainant con-
tends that it did not so descend, because she and her husband
owned the premises as tenants by the entirety, and were made
such by said deed, and that now, as survivor of her husband,
she is entitled to the whole of said premises. In order to
own the whole, as survivor, she would have to be seized of
the whole before his death. Whatever vested in her as sur-
vivor must have been owned by both her and her husband
before his death, and each must have been seized of the
whole. As neither one was seized of the whole, but both held
by distinct titles, they could not have been tenants by the
entirety. Neither were they tenants by entirety of the undi-
vided half conveyed to her, because David Pegg reserved no
interest in the undivided half he conveyed to the complain-
ant. The deed as a whole can not be construed as creating
a tenancy by entirety, because the law was not followed in
creating it. At the common law, the unities of time, title,
interest and possession had to be observed in creating such
an estate. * * * The common law has remained unchanged
in this respect, and is now in force. In an attempt to cre-
ate an estate by entirety, in the case under consideration,
neither the unity of time nor title was observed. The estate
was not created by one and the same act; neither did it vest
in them at one and the same time. If the clause inserted can
be said to be a part of the *habendum* of the deed, as is ar-
gued, then that part of the *habendum* must fail, on the ground
that it seeks to enlarge an estate in common, which is granted,
into an estate of entirety, without complying with the rules
of law for the creation of such an estate. By reason of these
considerations, the deed must be read as though the 'clause'
had been omitted. The deed created a tenancy in common
between complainant and husband, and upon his decease his
undivided one-half of the premises descended to his heirs."

The decision in *Pegg* v. *Pegg* is criticized in the editor's
note, and he cites *McRoberts* v. *Copeland,* 85 Tenn. 211, as
holding that where a husband conveys property, and in the

*habendum* reserves a life estate to himself and his wife, the life estate enures upon the death of the grantor to the survivor. But it is apparent that the controlling feature of *Pegg* v. *Pegg* was that the grant to the wife was only of an undivided one-half interest in the property, which made the wife a tenant in common, and which the Court held could not be enlarged by the subsequent clause of the deed. Neither the husband or wife was seized of the whole.

In the case at bar the conveyance was not in terms of an undivided one-half interest in the property, but a grant of the entire estate to husband and wife, "their personal representatives and assigns," and there is no conflict between the granting and the *habendum* clauses of the deed. The intention of the grantor that the whole estate should vest in the survivor is manifest, and that intention should prevail unless in conflict with some settled rule of law. *George's Creek Co.* v. *Detmold,* 1 Md. p. 238. Under the Code, a married woman may hold property acquired by her after her marriage as her separate estate, and a married man may convey property directly to his wife. Code, Art. 45, secs. 1 and 4; *Trader* v. *Lowe,* 45 Md. 1, 14. As Charles Lang did not intend to convey the estate to himself and wife as tenants in common, under the principle announced in *Cameron* v. *Steves,* Maria Lang would take the whole property. On the other hand, if, contrary to the express intention of the parties, we construe the deed as conveying to Maria Lang only an undivided one-half interest in the property, then under the decision in *Pegg* v. *Pegg,* Charles Lang and his wife held the property as tenants in common, and upon his death his interest passed to his personal representatives. If, as in *McRoberts* v. *Copeland,* we treat the deed as *creating* a new estate in *both* of the grantees, we not only have the common law unities of time, title, etc., of a tenancy by entireties, but we give effect to the clear intention of the parties, that the whole estate should vest in the survivor, his or her personal representatives and assigns.

In this case, however, we do not find it necessary to construe the deed in question. In the demurrer the appellants rely upon the statute of limitations. The judgment against Charles Lang was recorded on the 22nd of June, 1901, and the bill of complaint in this case was not filed until September 5th, 1916. Upon the death of an owner of leasehold property, the estate devolves upon his personal representatives. *Merryman* v. *Long,* 49 Md. 540. The bill alleges that no letters of administration upon the estate of Charles Lang were taken out. It further alleges that on the 8th of February, 1907, the plaintiff "recovered a judgment of *fiat executio* \* \* \* against Maria Lang, Albert Lang and Charles F. Lang, personal representatives of Charles Lang, deceased." If no letters of administration were taken out, as averred in the bill, Maria Lang, Albert Lang and Charles F. Lang could not have been the personal representatives of the deceased.

Where the defendant in a judgment dies, a *scire facias* may be sued out to revive the judgment against the administrator alone to bind the assets in his hands, but where it is desired to review the judgment against the land of the deceased judgment debtor the *scire facias* should also issue against the heirs and terre-tenants. 2 *Poe P. & P.,* sec. 593; *Tiers* v. *Codd,* 87 Md. 447. In *Polk* v. *Pendleton,* 31 Md. 118, CHIEF JUDGE BARTOL said: "Who are terre-tenants within the meaning of the law, whom it is necessary to make parties to the *scire facias?* All who are in possession, deriving title under the judgment debtor, such as heirs, devisees or alienees, after the judgment. They are in, as of the estate of the judgment debtor, and before the judgment can be revived and enforced by execution against the land, so as to divest their title, it is necessary to warn them by the *scire facias,* so that they may have an opportunity of making their defense, and claiming contribution from others holding lands of the judgment debtor, bound by the judgment. \* \* \* But where a party is in possession, holding by title adverse to that of the judgment debtor, or paramount to his, such party

is not a terre-tenant, within the meaning of the law, because his rights are in no manner affected by the judgment. If he has a good title, then he would have no right to claim contribution, by reason of the land being taken to satisfy the judgment."

The estate Maria Lang acquired under the deed in question was not subject to the lien of the judgment against Charles Lang, and she was, therefore, as to such interest, not a proper party to the *scire facias,* and her title under the deed was not affected by the alleged judgment of *fiat.* 2 *Freeman on Judgments* (4th Ed.), sec. 448; *Adams* v. *Stake,* 67 Md. 447.

Assuming that where a judgment debtor dies leaving leasehold property, the judgment may be revived by a *scire facias* against his next of kin as terre-tenants without making the administrator a party, the *scire facias* against them is a proceeding *in rem,* and the judgment obtained is not a personal judgment against them, but one subjecting the property in their possession, which belonged to the judgment debtor, to the payment of the debt, and the proceedings must therefore contain a specific description of the property against which execution is to be awarded by the judgment of *fiat.* 2 *Poe P. & P.,* sec. 600; *Thomas* v. *Bank,* 46 Md. 57; *Bish* v. *Williar,* 59 Md. 382; *Tiers* v. *Codd,* 87 Md. 447; *Wright* v. *Ryland,* 92 Md. 645. The bill does not allege that the judgment against Charles Lang was revived by a judgment of *fiat* against his next of kin or those who would be entitled to the property as distributees of his estate, and it does not therefore appear from the bill that the judgment was revived as a lien against the property. On the contrary, the bill alleges that he recovered a judgment of *fiat* against Maria Lang, Charles F. Lang and Albert Lang as the *personal representatives* of the deceased.

As we have said, the bill avers that no letters of administration were taken out. We would not be justified in holding that the judgment was revived against Maria Lang and Charles F. Lang, *as administrators of Charles Lang,* when

the bill clearly shows that they were not the administrators of his estate. In *Wilmer* v. *Trumbo,* 121 Md. 445, this Court held that execution on a judgment of *fiat* against one who had been proceeded against as the personal representative of the deceased judgment debtor, but who in fact was not the personal representative of the deceased, should be enjoined.

Upon the failure of those first entitled to administration to apply for letters, administration may be granted by the Orphans' Court to the largest creditor applying for the same. Code, Art. 93, Sec. 30. The statute of limitations begins to run as to judgments from the date of the judgment, and is not suspended by the death of the judgment debtor, or neglect of those entitled to obtain administration upon his estate. See *Brooks* v. *Preston,* 106 Md. 693, and cases cited in the opinion of the Court.

It follows from what has been said that the demurrer interposed in the Court below by Charles F. Lang and Henrietta V. Lang, his wife, and the Building Association, the appellants in this Court, should have been sustained, and that the decree of the Court below must therefore be reversed.

> *Decree reversed, with costs, and bill dismissed as to the appellants, Charles F. Lang and Henrietta V. Lang, his wife, and the Ninth West Columbia Building Association of Baltimore City.*