### FLORENCE V. HUTSON *v.* JOSEPH EMORY HUTSON
[No. 87, October Term, 1934.]

*Decided February 6th, 1935.*

The cause was argued before BOND, C. J., URNER, OFFUTT, SLOAN, and MITCHELL, JJ.

*Paul M. Higinbothom,* with whom was *Daniel E. Klein* on the brief, for the appellant.

*Arthur E. Hamm,* with whom were *Francis L. Klemm* and *David L. Elliott* on the brief, for the appellee.

MITCHELL, J., delivered the opinion of the Court.

The appellee, Joseph Emory Hutson, and his first wife, Mary, were owners as tenants by the entireties of the fee simple property, located in the City of Baltimore, which is known as No. 701 East Twentieth Street, where, for a number of years, they resided and conducted a grocery business. Mary Hutson died on the 15th day of May in the year 1932, the title to said property thereby vesting solely in the appellee, who continued to reside upon it and conduct business thereon. About two or three months after the death of his wife, the appellee, then about seventy years of age, made the acquaintance of the appellant, then about forty years of age, upon an occasion when she visited his store to solicit an order for articles which she was engaged in selling. From this acquaintance a courtship ensued, resulting in their marriage at Ellicott City, Maryland, on the 15th day of May, 1933.

The appellant, at the time of her marriage to the appellee, had been previously married to one Hilbinger, who was drowned. After the death of her first husband, she married Dodson R. Wagner, on October 14th, 1924, with whom she lived and cohabited for but a few weeks. On or about December 26th, 1924, Wagner filed a bill in the Circuit Court of Baltimore City praying a divorce *a mensa et thoro,* to which bill, on January 25th, 1925, the appellant filed a cross-bill praying a divorce *a mensa et*

*thoro* on the ground of desertion, and praying alimony. On May 21st, 1925, a decree was passed by the Circuit Court of Baltimore City dismissing Wagner's bill and awarding the appellant alimony. No divorce was granted the appellant in the above proceeding, and shortly after the decree therein Wagner went to Buffalo, New York, where he remained up to the time of the filing of the bill of complaint in this case. On April 28th, 1930, the appellant filed in the same court a bill of complaint against Wagner praying a divorce *a vinculo matrimonii* on the ground of abandonment, and an order of publication alleging that Wagner was a nonresident was duly published. No divorce was ever granted in this latter case; the appellant apparently having abandoned the suit, for the reason, as testified by her, that her mother had later advised her that Wagner was dead. Upon the undisputed evidence in this case, the status of the marriage of the appellant to Dodson R. Wagner was as above detailed at the time she entered into the marriage contract with the appellee, Joseph Emory Hutson. And upon this state of facts the appellee, immediately after ascertaining knowledge of the marriage to Wagner (which he alleges was obtained on the first Sunday in February, 1934), filed on February 7th, 1934, in the Circuit Court of Baltimore City, a bill of complaint praying the annulment of his marriage to the appellant because of her prior subsisting marriage to Wagner. On April 24th, 1934, the chancellor passed a decree annulling the marriage of the appellant with the appellee, and restoring them to their former status in the same manner and to the same extent as if said marriage ceremony had never been celebrated. No appeal from the annulment decree was taken.

On August 8th, 1933, prior to the annulment proceedings, the appellee caused the property hereinbefore mentioned to be conveyed to a certain Bernard H. Herzfeld in fee simple, and on the same date Bernard H. Herzfeld, unmarried, conveyed the said property to Joseph E. Hutson and Florence V. Hutson, his wife. The granting clause in the latter deed reads as follows: "Does grant

and convey unto the said Joseph E. Hutson and Florence
V. Hutson, his wife, as tenants by the entireties, their
assigns, the survivor of them, and such survivors, heirs,
etc."; and the habendum clause in said deed reads as fol-
lows: "Unto and to the use and benefit of the said Joseph
E. Hutson and Florence V. Hutson, his wife, as tenants
by the entireties, their assigns, the survivor of them, and
such survivors, heirs and assigns in fee simple."

Following the above conveyances, on August 26th, 1933,
the appellee executed a will, under the terms of which,
after providing for the payment of his just debts and
funeral expenses, he devised and bequeathed all of his
property and estate to his "beloved wife, Florence Vir-
ginia Hutson, absolutely." By that will the appellant was
also appointed sole executrix of the testator and released
from the obligation of executing a bond as such. The
execution of the deeds and the will represent voluntary
acts on the part of the appellee, and were in no way dic-
tated by the appellant. While the will is not the subject of
controversy in this case, we have made reference to it
for the purpose of showing the state of mind of the ap-
pellee at a time when he believed the appellant to be his
lawful wife.

The following questions and answers will, perhaps,
shed additional light as to the purpose of the appellee
when he caused the title to his property to be changed
from an individual holding to that of a tenancy by the
entirety, and when he executed his will: "Q. Why did
you give the defendant an interest in this property on
20th Street? A. To avoid any trouble in the future in case
either one of us passed out that the property would imme-
diately revert to the surviving one, and she being my
wife I wanted her to have it at my death. She was
younger than I was, and I expected to die first. Q. Did
you also make a will? A. Yes, the latter part of the
summer, I don't know the exact date. Q. Of what year?
A. 1933. Q. Can you identify this paper? A. Yes, it is
the will that I made willing everything that I would
possess at my death to my wife."

There is a conflict between the testimony of the appellant and the appellee as to when the appellee was advised by the appellant of her prior marriage to Wagner. Her contention is that she told him in August, 1932, of her marriage to Wagner, and that at the time of her last marriage she took it for granted that Wagner was dead. On the contrary, Mr. Hutson's contention is that the appellant never advised him of her second marriage, and that he ascertained the fact from other sources on or about the first Sunday in February, 1934. The next day he questioned the appellant, whereupon she admitted her marriage to Wagner and claimed she had secured a divorce, later telling him that her mother told her that Wagner was dead. The incident wherein the appellee, who procured the license to marry the appellant, applied for the same in the name of Hilbinger instead of Wagner, leads to the conclusion that Mr. Hutson knew nothing of the Wagner marriage at the time of his own marriage to the appellant, and tends to corroborate his testimony in the case. It may be that the appellant, at the time of her marriage to Hutson, in good faith believed Wagner was dead, or that the divorce proceedings, which in 1930 she had instituted against Wagner, had reached the stage of finality which permitted her to contract marriage with the appellee. But either of these assumptions on her part, in highest degree of good faith, would not be of any advantage to her, if, as was the fact, she was the lawful wife of Wagner, then living, at the time of her marriage to Hutson, and Hutson at that time had no knowledge of that fact.

In 12 *R. C. L.*, sec. 100, p. 345, it is said: "False representations which are made with knowledge of their falsity, and with a fraudulent intent, are, of course, ground for relief in equity as well as at law. As a general rule, however, courts of equity will grant relief in such cases by way of rescission or otherwise, even though no fraudulent intent on the part of the person making the representations is shown, and though he made them innocently, as a result of misapprehension or mistake. All

that need be shown under such circumstances is that the representations were false and actually misled the person to whom they were made."

In *Cahill v. Applegarth*, 98 Md. 503, 504, 56 A. 794, 797, it was said: "In equity 'the gist of the inquiry is not whether the party making the statement knew it to be false, but whether the statement made as true was believed to be true, and therefore, if false, deceived the party to whom it was made'."

On March 6th, 1934, the appellee filed a bill of complaint in the Circuit Court of Baltimore City, in substance setting forth his marriage to the appellant, the execution of the deeds vesting the title in the parties to this suit as tenants by the entireties; charging the appellant with fraud practiced upon him; alleging that he would not have conveyed to the appellant any interest in his property had he not *bona fide* believed she was his lawful wife; and praying that the said deeds might be declared and decreed to be null and void in the same manner as if they had never been executed. The bill further prays that the appellant be restrained, pending the final determination of the cause, from in any manner alienating or incumbering the property in controversy; and for general relief. The answer of the appellant admits the marriage ceremony, and the execution of the deeds, but denies the allegations of fraud; and the case being heard upon bill, answer, and testimony, the Circuit Court on the 4th day of June, 1934, passed a decree annulling the aforesaid deeds and restoring the property to the appellee. It is from that decree that this appeal is taken.

It is evident from the facts in this case that the appellee intended to give to the appellant an estate by the entireties in the property described in the deeds to which reference has been made. But it is also evident that the gift was predicated upon the theory that he was, at the time of the execution of the deeds, legally married to the appellant, and could create the peculiar form of tenancy which he sought to create. His purpose was to so arrange

the status of his property as to enable him to remain peacefully upon it as long as he desired, and upon his death to vest the sole title in his wife if she survived. It is hardly conceivable that he intended to create a tenancy by which he could be disturbed in the possession in his own lifetime, or by which the property could be incumbered and perhaps sold under partition proceedings, without his consent, when the granting and habendum clauses in the deed from Herzfeld are considered. In any event, the deeds effecting the transfer of title contemplate a tenancy peculiar to those who occupy the relations of husband and wife, which neither of the grantees therein can incumber, charge, or destroy without the cooperation of the other.

"The most important incident of tenancy by the entireties is that the survivor of the marriage, whether the husband or the wife, is entitled to the whole, which right cannot be defeated by conveyance by the other to a stranger, as in the case of a joint tenancy, nor by sale under execution against the other." 1 *Tiffany, Real Property,* 645.

In *Brewer v. Bowersox,* 92 Md. 573, 48 A. 1060, 1062, this court, in defining the distinctive qualities incident to a tenancy by the entireties, said: "This estate, with its incidents, continues in Maryland as it existed at the common law. * * * It differs materially from all other tenancies. The right of survivorship, which is one of its chief incidents, cannot be destroyed, except by the joint act of the two, and upon the death of either the other succeeds to the entire property or fund."

"The immunities of a tenancy by the entireties can be enjoyed only by a lawfully married pair." *Mitchell v. Frederick,* 166 Md. 42, 170 A. 733, 736.

It follows, therefore, that the appellant, if vested with any interest in the property in which she claims interest, must hold as a tenant in common or joint tenant with the appellee, by virtue of his gift to her; and, to maintain such a gift, the intention of the donor must be clearly established. "There must be an intention on the part

of the donor to relinquish the right of dominion on the one hand and to create it on the other." 12 *R. C. L.*, sec. 10, p. 933. Or, as stated in 28 *C. J.* 627, sec. 19: "A clear and unmistakable intention on the part of the donor to make a gift of his property is an essential requisite of a gift inter vivos. * * * In this respect there is no distinction between verbal gifts and those evidenced by writing, or between gifts of personalty and of realty. * * * Delivery of property without such intent, as, for instance, through inadvertence or mistake, will not support a gift." In the instant case the gift was made through "inadvertence and mistake," in the belief that the donee was the wife of the donor. His intention was to give only to his wife; and the annulment of the marriage strikes down the gift. "The intention of the grantor * * * should prevail unless in conflict with some settled rule of law." *Lang v. Wilmer*, 131 Md. 224, 101 A. 706, 709.

We can place no construction upon the deeds, favorable to the appellant, which would not at the same time work gross injustice to the appellee.

As stated by the chancellor in his opinion filed in this case: "There is nothing in the record of this case which would support a conclusion that the plaintiff did not intend to enjoy the immunities which ordinarily accompanied the tenancy which he thought he was creating, and it would be highly inequitable to allow a conveyance to stand which would inevitably lead to a result which never was in his contemplation. The question presented, so far as legal precedent is concerned, is a novel one. The case differs from those cases in which both parties, knowing they are not married, yet hold themselves out as husband and wife, and take title to property as tenants by the entireties. The case is also to be distinguished from cases in which people living together as husband and wife, and in good faith believing themselves to have that status, acquire property by their joint labor and enterprise, and take title to the same as tenants by the entireties. In the instant case the property was wholly owned by the plaintiff. The defendant had no share in

the creation of the estate. The plaintiff acts in absolute good faith, believing himself to be lawfully married to the defendant, and if there is any fault on the part of either plaintiff or defendant, the fault is on the part of the defendant. The only possible consideration which might be said to have passed from the defendant to the plaintiff was the fact that he had her companionship and society during the months that they had lived together ostensibly as husband and wife. In this situation the reasoning of the case of *American Surety Co. v. Conner*, 251 N. Y. 1, 166 N. E. 783, is pertinent: 'If the woman had been the wrongdoer rather than the victim, and the man, innocent of any fault, were suing after annulment to reclaim what he had lost, the recovery would not fail because he might be left in possession of gains not subject to appraisal, the enjoyment of her society while the marriage bond subsisted.' In the same case, at page 11 of 251 N. Y., 166 N. E. 783, the court, Judge Cardozo, said: 'After all, the underlying principle, running through the cases, is this and nothing more, that the action for money had and received upon a failure of consideration, partial or complete, is to be ruled by broad considerations of equity and justice, and that the plaintiff may not prevail if he fails to satisfy the court that what the defendant has received should in conscience be returned.'" And see the decision of this court in *Grossman v. Greenstein*, 161 Md. 71, 155 A. 190.

For the reasons stated, the decree appealed from will be affirmed.

*Decree affirmed, with costs.*