a separate document,[1] which was not satisfied by the trial court's judgment dated June 9, 1994. He argues that this defect was cured on June 23, 1994, which must be considered the date of the judgment for appeal purposes.

Appellees oppose the motion to reconsider, noting the trial court's compliance with both the Territorial Court Rules and the Federal Rules of Civil Procedure. For the reasons stated herein, we reject all of appellant's requests, namely, to vacate the dismissal, reinstate the appeal, and file the appeal out of time.

The Territorial Court's Judgment dated June 9, 1994 satisfied the technical requirements of FED.R.CIV.P. 58, by being presented on a separate document.[2] Appellant mistakenly refers to cases where, unlike here, a written judgment was not created by the trial court. Accordingly, the time to file the notice of appeal began to run on June 9, 1994, the date the judgment was entered.

Appellant did not file his notice of appeal until July 20, 1994, clearly outside the thirty-day filing deadline of FED.R.APP.P. 4(a). No motion to file out of time was filed with this Court, which would have given appellant an opportunity to demonstrate excusable neglect or good cause. Thus, this Court is without authority to reinstate the appeal. Upon reconsideration of this Court's Order of Dismissal dated January 9, 1995, and the Court being advised of the premises accordingly,

**IT IS ORDERED:**

**THAT** appellant's motion to vacate the order of dismissal and reinstate appeal is **DENIED.**

Linda L. BRAITHWAITE, Petitioner,

v.

The JOHNS HOPKINS HOSPITAL, Defendant.

No. PJM 93–4147.

United States District Court, D. Maryland.

Feb. 28, 1995.

---

expiration of the time prescribed by this Rule 4(a)."

1. Appellant also submits that his response to appellees' motion to dismiss was timely filed on January 12, 1995. This Court rejects appellant's suggestion that this Court conveniently disregard the Federal Rules of Appellate Procedure in construing the deadline within which to file a response. The District Court's Local Rule of Civil Procedure 76.1 states that practice in the appellate division should "be governed by the Federal Rules of Appellate Procedure ... and such local rules as experience determines to be necessary and appropriate". Appellant's attempt to pick and choose rules that support his position cannot be condoned nor overlooked. Even without appellant's misapplication of this Court's procedural rules, appellant has failed to present any viable theory which authorizes this Court to consider his appeal.

2. We have already fully explained how the judgment complies with Terr.Ct.R. 49 and 65.

Linda L. Braithwaite, pro se.

Marcy M. Hallock, Elizabeth G. Jacobs, Baltimore, MD, for defendant.

## OPINION

MESSITTE, District Judge.

### I.

The Court considers whether Plaintiff who, without leave of court, served her complaint on Defendant more than 120 days after filing of the complaint, had "good cause" within the meaning of Federal Rule of Civil Procedure 4(m) to delay because of psychological distress, based in part on the fact that her daughter was murdered in the interim. Reluctantly, the Court is unable to find "good cause" and will dismiss the complaint.

### II.

On September 30, 1993, the U.S. Equal Employment Opportunity Commission (Baltimore District Office) issued a determination dismissing Linda Braithwaithe's claim against Johns Hopkins University Hospital in which she alleged discrimination based on her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5, *et seq.* On December 22, 1993, Braithwaithe, acting *pro se*, filed suit against the hospital in this Court based on the same transaction. On the same day she requested the Clerk of the Court to withhold service of process.

On June 23, 1994, more than 60 days out of time, Braithwaite wrote to this member of the Court (to whom the case had been as-

signed), stating that "(s)hortly after I filed the appeal, in January, 1994, I retained an attorney to handle my case." She further related that "on February 21, 1994, my only child, Danielle Vaness Coady, was found tragically murdered in (Canada). I was already being treated for severe depression before my daughter's death. Needless to say the shock of her death and the loss has left me devastated." Reporting that she and her husband had just returned from Canada where she was awaiting a trial in the case (eventually postponed), she requested "an extension of time on my appeal case. I will do my very best to resume the matter with my attorney over the next few months." [1]

Soon after sending her letter, Braithwaite called the Court's chambers seeking a response. Upon being told by Chambers that it would take no action without hearing from Defendant, Braithwaite apparently undertook to serve Defendant with the suit papers, which she accomplished on or about July 22, 1994, sending the papers to Defendant by certified mail.

On August 4, 1994, Defendant filed a Motion to Dismiss on the basis of insufficiency of service of process, specifically Plaintiff's failure to serve the Complaint within 120 days after filing as required by Fed.R.Civ.P. 4(m). A copy of Defendant's motion was sent to Plaintiff at her address of record, as was the notice sent by the Clerk of the Court on August 9, 1994, advising Plaintiff that Defendant had filed a dispositive motion which, if granted, could result in dismissal of her action.[2]

On August 18, 1994, Braithwaite wrote to the Clerk of the Court, this time copying defense counsel and this member of the Court, in which she advised that she had been subpoenaed to appear as a material witness at the trial in Canada resulting from her daughter's murder in Canada and asking that any trial date in the case at bar be scheduled no sooner than two weeks after September 26, 1993. Plaintiff, however, filed no response to the Motion to Dismiss.

---

1. Plaintiff did not, as of that time, send a copy of the letter to Defendant.

2. The Clerk's letter set out a number of details regarding the need for response, explicitly advising Plaintiff that she had 17 days from the date of the letter to file any relevant opposing materials.

So things stood until January 20, 1995, when the Court sent a show cause order to both parties, directing Plaintiff in particular to show cause within 30 days why her complaint should not be dismissed for failure to comply with the 120 day rule. On February 1, 1995, Defendant responded, arguing that Plaintiff had not shown good cause and pointing out that her earlier letters to the Court (which Defendant had by then received) were merely requests for extension of time and also that Plaintiff had acknowledged having legal representation as early as January 1994. On February 20, 1995, Plaintiff replied and once again stated that she had retained an attorney to represent her in January of 1994:

> It was my assumption that the law firm of Spence, Kohler, Christie, and Pulver, P.A. had filed the necessary paperwork with the court, requesting a postponement from the 120 day guideline, due to the tragic murder of my daughter on February 21, 1994 ... During the period of January 1994 until August 31, 1994, I truly felt that the law firm was representing me ... Throughout this entire period I have relied upon my legal counsellors to follow whatever procedure is necessary in regard to this case.

It is clear, however, that no attorney ever entered an appearance on Plaintiff's behalf in these proceedings and it is likewise undisputed that Plaintiff did not accomplish service of process upon Defendant in this case until 212 days after her suit was filed.

## III.

Fed.R.Civ.P. 4(m) provides, in pertinent part, that:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

■ Rule 12(b)(5) provides for the filing of a motion to dismiss based on insufficiency of service of process. Plaintiff filed her complaint 92 days out of time and Defendant has moved to dismiss on that basis. The crucial question, therefore, is whether Plaintiff has shown "good cause" for the belated service.[3] Absent that, the complaint must be dismissed. The Court has no discretion to salvage the action. *See Mendez v. Elliot*, 45 F.3d 75, 78 (4th Cir.1995). As the Fourth Circuit noted in *Mendez*, "[i]n transferring the burden of service to the litigants and imposing on them a 120–day period for service, the [rule] ... serve[s] to encourage more efficient, speedy, and inexpensive litigation, values espoused by Rule 1." *Id.* 45 F.3d at 78.

"Good cause" in the context of Rule 4(m) and its predecessor Rule 4(j)[4] has been defined in a number of instances. The one example provided by the legislative history is a defendant's evasion of service. *See* 1982 U.S.C.C.A.N. 4434, 4446 n. 25. Other examples include instances where, due to a clerk's negligence, a summons was not issued timely, *cf. Abdel–Latif v. Wells Fargo Guard Serv., Inc.*, 122 F.R.D. 169, 174 (D.C.N.J. 1988); the Marshal's Office failed to effect service, *see Sellers v. United States*, 902 F.2d 598, 602 (7th Cir.1990), or perhaps where the parties were engaged in good faith settlement discussions. *Cf. Mendez, supra.*

■ What is clear, however, is that inadvertence or neglect of counsel to file in timely fashion will not suffice, *see, e.g., Quann v. Whitegate–Edgewater*, 112 F.R.D. 649, 662 (D.Md.1986); *Wei v. Hawaii*, 763 F.2d 370, 372 (9th Cir.1985).

■ Additionally, there appear to be no reported cases in which the illness of a litigant or the obviously traumatizing death of an immediate family member has been

---

**3.** Defendant also requests dismissal based on the fact that for over 13 months, Plaintiff has filed no papers in the case. *See* Fed.R.Civ.P. 41(b); Local Rule 103.8.b. In view of the Court's disposition of this case because of Plaintiff's noncompliance with Rule 4(m), it is unnecessary to address this alternative argument.

**4.** The rule was renumbered effective December 1, 1993.

deemed "good cause," a fact in and of itself suggestive of the likely unavailability of such an excuse. Yet there is the analogous principle that even the death of the party herself will not ordinarily suspend the running of a statute of limitations. *See, e.g., Lang v. Wilmer,* 131 Md. 215, 101 A. 706 (1917). Moreover recognition of illness or death in the family as "good cause" to delay compliance with the rule would tread a perilous path. Without intending to diminish the anguish of Plaintiff or those similarly situated to her, several other life events—job loss, foreclosure on a home, or indeed the death of a loved one due to natural causes—could also lead an individual to neglect her legal requirements. Distinguishing among and between such causes would be virtually impossible.

While it has been said that a measure of lenience ought to be exercised when *pro se* litigants are involved, *see, e.g., Robinson v. America's Best Contacts & Eyeglasses,* 876 F.2d 596 (7th Cir.1989), Fed.R.Civ.P. 4(m), Notes of Advisory Committee on Rules to 1993 Amendment, that concept, it appears, has been applied illogically by courts which have declined to dismiss actions where the unserved defendant had actual notice of a complaint; *but see, e.g., Way v. Mueller Brass Co.,* 840 F.2d 303, 306 (5th Cir.1988); where no prejudice could be shown by the defendant, *but see, e.g., West Coast Theater Corp. v. City of Portland,* 897 F.2d 1519, 1529 (9th Cir.1990); or where dismissal might deprive the plaintiff of any remedy because the statute of limitations has .run, *e.g., Solis v. Shalala,* 157 F.R.D. 396, 397 (N.D.Tex.1994). Such considerations, of course, bear not at all on the existence *vel non* of "good cause" for failure to make diligent efforts to comply with Rule 4(m); at most they represent diverse equitable considerations for not dismissing an action. The Fourth Circuit, however, has shown itself unwilling to countenance such reasons. Thus, even though dismissal is to be "without prejudice" under the rule, "without prejudice" does not mean "without consequence," *Mendez, supra,* 45 F.3d at 78, and the rule

"does not give the (party) the right to refile without the consequences of time defenses, such as the statute of limitations." *Mendez,* 45 F.3d at 78; *see also McDonald v. United States,* 898 F.2d 466, 468 (5th Cir.1990).

IV.

In view of the foregoing, Plaintiff's proffered cause for noncompliance with Rule 4(m) will not stand. To the extent she may in fact have relied on attorneys to take care of promptly serving her complaint,[5] any inattention on their part would be expressly inconsistent with case authority. *See, e.g., Quann,* 112 F.R.D. 649; *Wei,* 763 F.2d 370. To the extent she may have been acting *pro se* and was immobilized by the tragedy in her personal life, there is, quite simply, no authority that would support such an excuse nor, as indicated, would acknowledgment of that excuse necessarily be wise or fair from a policy standpoint.

Under the circumstances, Defendant's Motion to Dismiss will be granted without prejudice, though not perhaps without consequence to Plaintiff.

---

5. There is a puzzling inconsistency between Plaintiff's contention that she relied on her attorneys to take care of the filing and the fact that she herself wrote the Court on two occasions after the 120 period seeking extensions of time.