## DONNELLY *v.* DONNELLY

[No. 10, October Term, 1951.]

*Decided October 31, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*R. Lewis Bainder* for Henry Arthur Donnelly.

*John S. White* and *C. Orman Manahan* for Elsie Virginia Donnelly.

GRASON, J., delivered the opinion of the Court.

Henry Arthur Donnelly and Elsie Virginia Donnelly were married on March 8, 1935, at Martinsburg, West Virginia. The marriage ceremony was conducted in a perfectly legal manner and they were supposedly validly married. Prior thereto Elsie was married to a man by the name of John Blankenship and had a son by him. The Donnellys lived together as man and wife, continuously, for eleven years, when differences arose between them and they separated in 1946.

On December 23, 1935, these parties executed an agreement with the Hanover Banking and Building Association of Baltimore City, a body corporate, whereby they agreed to purchase a tract of land in Anne Arundel County, containing about 27½ acres, with improvements.

Subsequent to the separation Donnelly instituted, in the Circuit Court for Howard County, a divorce proceeding in which he alleged that Elsie had abandoned and deserted him, and prayed for a divorce a *vinculo matrimonii*. At the trial of this divorce case Donnelly produced Blankenship, the former husband of Mrs. Donnelly, whereupon the chancellor in the divorce proceeding, on the "twenty-sixth day of January, 1949, * * * Adjudged, Ordered and Decreed that the marriage of the said Henry A. Donnelly to the said Elsie V. Donnelly at Martinsburg, West Virginia, on the eighth day of March, 1935, be, and the same is hereby, declared null and void".

On May 2, 1949, Henry A. Donnelly filed, in the Circuit Court for Anne Arundel County, in Equity, a bill of complaint against Elsie Virginia Donnelly, wherein he prayed, among other things, that the agreement made on the 23rd day of December, 1935, for the sale by the said Building Association to Henry Arthur Don-

nelly and Elsie Virginia Donnelly, his wife, "be declared null and void and of no force and effect in law".

An answer was filed, and on the same day the defendant in the original bill filed a cross bill wherein she prayed, among other things, "That a trustee or trustees may be appointed to make sale of the premises hereinbefore mentioned (the property covered by the agreement of sale aforesaid) and to divide the proceeds thereof among the parties entitled, according to their respective interests". An answer was filed to the cross bill by Donnelly, and testimony taken before the chancellor, consisting of only two witnesses, namely Henry A. Donnelly and Elsie Virginia Donnelly, the parties to this case.

On February 8, 1951, the chancellor dismissed the original bill and "* * * further Adjudged, Ordered and Decreed that the defendant and cross-plaintiff, Elsie V. Donnelly, be, and she is hereby declared to be entitled to an undivided one-half equitable interest as a tenant in common in the property mentioned and described in these proceedings", and further adjudged that the plaintiff pay the costs of the proceedings. From this decree both parties to the proceedings appealed to this court.

Donnelly contends that as Elsie V. Donnelly was not legally married to him on the 23rd day of December, 1935, when the Building Association agreed to sell to him and Elsie V. Donnelly, "his wife", the property aforesaid, that Elsie V. Donnelly has no interest in the property. Elsie V. Donnelly contends that the chancellor was correct in decreeing that she was entitled to "an undivided one-half equitable interest as tenant in common" in said property, but she says that the chancellor should have gone further and appointed trustees for the sale of said property and for the division of the proceeds thereof between herself and Donnelly.

Much testimony was devoted in establishing the financial condition of the parties both before and after the date of the contract in question, but the view we take of this case renders such testimony immaterial.

Donnelly met Elsie Donnelly in Pittsburgh, Pennsylvania. For a number of years before their marriage he went to to see her regularly. He undoubtedly wanted to marry her, for they were married. His testimony is that she told him her husband was dead. He knew perfectly well that she thought she was a widow. He said he thought it was unfair to ask her about her past life. It seems passing strange that Donnelly was so uninterested in the past life of the woman he wanted to marry that he did not inquire, or that they did not talk about her past life. When asked several times about what she told him, he reiterated the answer that she told him "that her husband was dead". He testified that he did not know Elsie Donnelly had a son by Blankenship.

On the contrary Mrs. Donnelly testified that before their marriage they frequently discussed her marriage status. She said she told him that she married Blankenship in 1918, and two years thereafter he deserted her; that six months after the desertion she heard from Blankenship, but thereafter she never heard of him, and she supposed he was dead. According to her testimony, Donnelly went with her to see the parents of Blankenship, in Baltimore City, and the mother of Blankenship told her, in Donnelly's presence, that her son was dead and that he had a life insurance policy in which she (the mother) was the beneficiary, and she collected the life insurance. Mrs. Donnelly said that she was still concerned about her marriage status, and that Donnelly told her he would take her to a lawyer friend of his who practiced law at Homestead, Pennsylvania; that they went to see this lawyer and, whereas the record does not specifically disclose that the lawyer said that she could marry, the inference is inescapable that he told both Mrs. Donnelly and Donnelly that Mrs. Donnelly could validly marry.

Donnelly says that all this was after their marriage and was brought about by an investigation by the Veterans Administration of whether or not Blankenship

was dead. But the chancellor found, and we think he was correct, that the trip to Baltimore to see the parents of Blankenship, and the trip to Pennsylvania to see the lawyer at Homestead, were before they were married, in 1935, at Martinsburg, West Virginia. There can be no doubt, from this record, that Donnelly and Elsie Donnelly thought that Blankenship was dead and that their marriage was perfectly legal.

The facts in this case are entirely different from the facts in the *Hutson v. Hutson* case, 168 Md. 182, 177 A. 177, 180. In that case Hutson, a widower, married Florence B. Hutson on May 15, 1933, and caused certain property belonging to him to be transferred to himself and Mrs. Hutson as tenants by the entireties. In February, 1934, Hutson discovered that Mrs. Hutson was legally married to a man by the name of Wagner. On February 7, 1934, Hutson filed a bill for annulment of his marriage to Florence Hutson. There was fraud on the part of Mrs. Hutson as to what she told Hutson concerning her marriage status. The decree was granted, annulling the marriage, and was affirmed by this court. In the *Hutson* case this court quoted from *Lang v. Wilmer*, 131 Md. 215, 224, 101 A. 706, 709, 2 A. L. R. 1698, as follows: " 'The intention of the grantor * * * should prevail unless in conflict with some settled rule of law.' " It is also said in the *Hutson* case: " 'The case is also to be distinguished from cases in which people living together as husband and wife, and in good faith believing themselves to have that status, acquire property by their joint labor and enterprise, and take title to the same as tenants by the entireties.' "

It is conceded that the marriage between these parties was a nullity, and properly so. If Mrs. A. makes fraudulent statements to Mr. B. concerning her marriage status, and Mr. B., relying thereon, marries her at a time when she has a husband living, who has not been legally divorced from her, her marriage to Mr. B. is a nullity; and if Mr. B. in good faith thinks she is his valid wife, and makes a gift to her of property, whether real or

personal, as his wife, and thereafter the supposed marriage is annulled, the gift fails, for it falls with the annulment, provided the aggrieved party applies promptly to the courts for relief. The reason is that the donor intends to give to a woman who is his wife—there is no intention to give to one who is not his wife. *Hutson v. Hutson, supra.*

In a case where there is no fraud involved, and Mrs. A. thinks her husband is dead, and in good faith communicates to Mr. B. all the facts and circumstances which cause her to believe that her husband is dead, and marries B. and lives with him for a number of years as husband and wife, thinking she is legally married to him, and they acquire property as husband and wife, a different rule governs property rights, although the marriage is a nullity.

These people were married on March 8, 1935. The agreement to purchase the property was entered into on December 23, 1935. This case was instituted on May 2, 1949. The parties lived on this property from the time of its purchase, in 1935, until 1946, when the separation occurred. Thus for eleven years they lived together on the property in question. The inquiry conducted by the Veterans Administration as to whether Blankenship was living or dead was long before these parties separated. It may be said in passing, without discussing the question in detail, that each of these parties worked and contributed in making payments to the Building Association under the contract of purchase. Mrs. Donnelly testified that she and her husband talked together concerning the execution of this contract with the Building Association. She said she negotiated with the Building Association as well as her husband. The contract is entered into by the Building Association and Henry Arthur Donnelly and Elsie Virginia Donnelly, *his wife,* and was so executed by them. The marriage was a nullity at that time and it was legally impossible for Mrs. Donnelly to enter into the agreement as a wife of Henry Arthur Donnelly.

What we have here is a case where a man and a woman went through a marriage ceremony, each thinking, in good faith and without a semblance of fraud, that they occupied a status that validly permitted them to marry, but years afterwards, by a decree of court, it was determined that at the time of the marriage the woman had a husband living, and that neither she nor her husband had procured a divorce.

Turning to the contract in this case, under which these parties acquired the property in question, among other things, it states: "This Agreement, Made this 23 day of December, in the year one thousand nine hundred and thirty-five, between THE HANOVER BANKING AND BUILDING ASSOCIATION OF BALTIMORE CITY, a body corporate, in the State of Maryland, of the first part, and HENRY ARTHUR DONNELLY and *ELSIE VIRGINIA DONNELLY, his wife,* of the second part." (Italics supplied.) It is apparent that Elsie Virginia Donnelly is a party to this contract, but not a party to it as Donnelly's "wife", as she could not be a party to it as his wife because she was not his wife. Now after all these years, and after the circumstances which we have referred to, the plaintiff in the original bill, and the defendant under the cross bill, contends that Elsie Donnelly, having entered into a marriage which was invalid, has no interest whatsoever in the property concerned, and that the same should be decreed his absolute property, free and clear of any interest whatsoever of Elsie Donnelly.

It will be noted that the words "his wife" used in the contract are unqualified: no words of limitation are employed. If the words "his wife" are dropped from the instrument (as they must be) Donnelly and Elsie Donnelly acquire an interest in common in the property referred to.

In *Kolker v. Gorn,* 193 Md. 391, 398, 67 A. 2d 258, 261, property was conveyed to John M. Gorn, Samuel G. Gorn and Margaret A. Gorn, his wife, as joint tenants. John was the father of Samuel. John supplied Samuel with

money to purchase the land and build a home to be occupied by himself and minor son and Samuel and his wife. All three contributed towards the cost of building the house. It was contended that the property was to be owned, one-half by the father and one-half by Samuel and his wife. Payments on a mortgage were made equally by the father and Samuel, as were expenses of the house. Judge Henderson, speaking for the court, said: "In the instant case we find nothing in the instrument, other than the descriptive word 'wife', to indicate an intention that the joint tenancy should exist between the first-named grantee and the other two. Since we have held that the use of the words 'joint tenants' rebuts the presumption arising from the word 'wife', or the fact that the grantees are husband and wife, we find no basis in the language itself for severing the tenancy into two different types. The qualifying words seem clearly applicable to all three parties, and their respective 'survivors or survivor'."

The agreement of December 23, 1935, is between the Building Association and Henry Arthur Donnelly and Elsie Virginia Donnelly, "his wife", of the second part. The *Kolker* case was governed by the descriptive words which controlled the character of tenancy by which the grantees held the property. In this case the descriptive word "wife" is unqualified, and as Elsie Virginia Donnelly was not the wife of Henry Arthur Donnelly we hold that they took as tenants in common of the land described in the agreement, and that the Kolker case controls the case at bar. We have considered the cases on the brief of the appellant, some of which are from other jurisdictions, but we cannot use them in the case at bar because we must be governed by our own precedents. Under the agreement aforesaid these parties were to pay $3,200.00 for the property, in installments of $30.00 a month, from which the taxes and insurance were to be paid, and the balance applied to the purchase price. There has been no breach of this contract and there is now due under it about $1,800.00. Since the

Howard County Court annulled the supposed marriage between these parties, Elsie Donnelly has divorced Blankenship and married one Smithson and appears in this record as Elsie Virginia Donnelly, presently known as Elsie Virginia Smithson.

It was agreed between the Donnellys that the property involved in this case could not be divided in kind without loss or injury to the parties. We therefore are of the opinion that the plaintiff in the cross bill was entitled to have a trustee or trustees appointed by the chancellor to sell the property and divide the proceeds between the Donnellys according to their respective rights. Code 1939, Art. 16, sec. 159; *Cook v. Hollyday,* 186 Md. 42, 45 A. 2d 768; *Birckner v. Tilch,* 179 Md. 314, 18 A. 2d 222.

> *Decree affirmed in part and reversed in part and case remanded for the passage of a decree in conformity with this opinion. Costs to be paid by Henry Arthur Donnelly.*