■ Susan McCoy, Appellant, v Kenneth I. Feinman et al., Respondents. [737 NYS2d 481] —Appeal from an order of Supreme Court, Erie County (Rath, Jr., J.) entered September 8, 2000, which granted defendants' motion for summary judgment.

It is hereby ordered that the order so appealed from be and the same hereby is affirmed without costs.

Memorandum: Supreme Court properly granted defendants' motion for summary judgment dismissing the complaint in this legal malpractice action as time barred. In January 1986 plaintiff retained defendants to represent her in an action for divorce. A stipulation of settlement was placed on the record on June 23, 1987 and filed with the judgment of divorce on June 14, 1988. In placing the stipulation of settlement on the record, defendant Kenneth L. Feinman stated:

"Your Honor, [plaintiff's former husband] maintains a pension plan through his employment at Harrison Radiator. And it is agreed by the parties that [plaintiff] shall receive a portion of this pension plan calculated with recourse pursuant to the formulas set forth in the case of Majauskas and Szulgit * * *.

"Your Honor, the pension shall be divided pursuant to the figures I have just indicated by recourse to a Qualified Domestic Relations Order [QDRO] which my office shall prepare and submit to the Court either simultaneously with or shortly after the judgment of divorce."

The parties agree that defendants failed to prepare and file a QDRO. When plaintiff's former husband died on September 1, 1994, at the age of 45, plaintiff learned that she would not be eligible to receive any of his pre-retirement death benefits because his pension plan did not provide for those benefits and no QDRO had been filed. This action was commenced on June 12, 1996.

According to defendants, the alleged malpractice was their failure to negotiate and procure preretirement death benefits with respect to the June 23, 1987 stipulation and thus, at the latest, the statute of limitations began to run when the judgment of divorce was entered without the QDRO. According to plaintiff, the malpractice was defendants' failure to file the QDRO but the statute of limitations did not begin to run until she suffered actual ascertainable damages, i.e., at the time of her former husband's death (*see, Dana v Oak Park Mar.*, 230 AD2d 204, 210).

We conclude that the date on which the judgment of divorce was entered without a QDRO, which precluded plaintiff from receiving either pre or postretirement benefits, was the date of injury. The statute of limitations therefore began to run on that date, rendering this action time barred (*see, Ackerman v Price Waterhouse,* 84 NY2d 535, 541-543). In *Ackerman,* an action against an accounting firm, the Court of Appeals determined that the date of injury, and thus the date on which the statute of limitations began to run, was the date of the client's receipt of the tax forms and schedules prepared by the accounting firm, not the date on which the Internal Revenue Service determined that additional taxes were due (*see, Ackerman v Price Waterhouse, supra,* at 543). In so holding, the Court of Appeals noted the desirability in malpractice cases against professionals of having a predictable date of injury to mark the commencement of the statute of limitations. The Court wrote, "The utter lack of predictability inherent in a Statute of Limitations based on the date the IRS assesses a deficiency is apparent from the fact that [the accounting firm] would remain liable for work performed a decade ago even though traditional principles governing negligence actions instruct that plaintiff was injured, and any claim accrued upon performance of the professional service" (*Ackerman v Price Waterhouse, supra* at 543). Contrary to the contention of plaintiff, the fact that she was unaware of the act of malpractice when the judgment of divorce was entered and did not learn of it until after her former husband's death is not dispositive (*see, Shumsky v Eisenstein,* 96 NY2d 164, 166; *Glamm v Allen,* 57 NY2d 87, 93).

Here, as in *Ackerman (supra)*, there would be no predictability in a statute of limitations based on the date of death or the date of retirement; indeed, either event could have occurred 20 or more years after the filing of the judgment of divorce.

We have reviewed plaintiff's contention with respect to the continuous representation doctrine (*see generally, Glamm v Allen, supra* at 93-94) and conclude that it is without merit.

All concur except Hayes, J.P., and Scudder, J., who dissent and vote to reverse in the following memorandum.

Hayes, J.P. and Scudder, J. (dissenting). On January 9, 1986, plaintiff retained defendants to represent her in a matrimonial action pursuant to a written retainer agreement. On June 23, 1987, a stipulation of settlement was placed on the record by Kenneth I. Feinman (defendant) in plaintiff's presence. Plaintiff orally agreed to the stipulation and signed a writing ratifying it. The stipulation included the following statement by defendant: "Your Honor, the pension shall be divided pursuant to the figures that I have just indicated by recourse to a Qualified Domestic Relations Order [QDRO] which my office shall prepare and submit to the Court, either simultaneously with or shortly after the judgment of divorce." The QDRO was never prepared or filed. The judgment of divorce filed on June 14, 1988 included the provision that the parties' stipulation would be incorporated in the judgment but not merged therein.

On September 1, 1994, plaintiff's ex-husband died at the age of 45. Plaintiff contacted defendant to inquire about her right to preretirement death benefits provided for in her ex-husband's pension plan. Plaintiff met with defendant in September 1994 and again in July 1995 regarding those benefits, and correspondence regarding those benefits was sent to the pension plan administration center by defendant law firm. A benefit analyst for the pension plan administration center indicated that, without a QDRO, the divorce terminated plaintiff's right to preretirement death benefits. No QDRO existed at the time of the death of plaintiff's ex-husband, and the filing of a QDRO after the date of death would be in violation of the pension plan. On January 9, 1996, defendant law firm notified plaintiff that her file had been closed.

Plaintiff commenced this legal malpractice action on June 12, 1996, and defendants moved for summary judgment dismissing the complaint as time barred. According to defendants, the alleged malpractice was their failure to negotiate and obtain preretirement death benefits at the time of the June 23, 1987 stipulation of settlement. According to plaintiff, defendants' malpractice was the failure to prepare and file a

QDRO, and the statute of limitations did not begin to run until the death of her ex-husband, when she sustained actual ascertainable damages. Plaintiff further contends that the doctrine of continuous representation applies under the facts of this case.

The statute of limitations for an action to recover damages for legal malpractice is three years (*see,* CPLR 214 [6]). CPLR 203 (a) provides: "Accrual of cause of action and interposition of claim. The time within which an action must be commenced, except as otherwise expressly prescribed, shall be computed from the time the cause of action accrued to the time the claim is interposed." Thus, on this appeal we must determine the date on which the cause of action for legal malpractice accrued.

In order to plead a viable cause of action for legal malpractice, plaintiff must allege that defendants were negligent; that the negligence was the proximate cause of the loss sustained; and that plaintiff sustained actual damages (*see, Prudential Ins. Co. of Am. v Dewey Ballantine, Bushby, Palmer & Wood,* 170 AD2d 108, 114, *affd* 80 NY2d 377, *rearg denied* 81 NY2d 955). A claim for future damages is not sufficient to state a cause of action for legal malpractice (*see, IGEN, Inc. v White,* 250 AD2d 463, 465-466). In our view, plaintiff did not sustain actual damages until September 1, 1994, the date of her ex-husband's death. On that date, plaintiff could viably allege that the failure to prepare and file the QDRO was the proximate cause of her loss, i.e., the inability to collect preretirement death benefits, the sum of which was ascertainable. If plaintiff had attempted to commence a legal malpractice action prior to that date the court would have granted a motion seeking dismissal of the action because of her inability to plead actual, ascertainable damages.

The majority concludes that the statute of limitations began to run when the judgment of divorce was filed, based on its apparent belief that the failure to file a QDRO when the judgment of divorce is filed constitutes malpractice. The majority, however, cites no authority to support that belief, and we know of none. Although we agree with the majority that it is desirable to have an early determinable date for the commencement of the statute of limitations in malpractice cases against professionals, it is beyond reason to conclude that the statute of limitations begins to run before the date on which plaintiff has a viable cause of action. In effect, the majority draws a legal distinction between the accrual of a cause of action and the right to sue on that cause of action, a distinction that has been rejected by the Court of Appeals. In *LaBello v Albany Med.*

*Ctr. Hosp.* (85 NY2d 701, 705), relying upon *Jacobus v Colgate* (217 NY 235, 241), the Court wrote: "Our precedents, on careful analysis, do not support such a distinction between ' "hav[ing] a cause of action" ' and ' "hav[ing] the right to sue" ' * * *.' "A cause of action is the right to prosecute an action with effect" * * *. *It is not possible for one at the same time to have a cause of action and not to have the right to sue."* ' " (Citation omitted.)

To adopt the date on which the judgment was filed as the date on which the statute of limitations began to run "would illogically push accrual back *before* the cause of action itself comes into being" (*LaBello v Albany Med. Ctr. Hosp., supra* at 706). The Court in *LaBello v Albany Med. Ctr. Hosp.* (*supra* at 706) noted that such a result "runs afoul" of its decision in *Kronos, Inc. v AVX Corp.* (81 NY2d 90, 94), wherein it wrote that "accrual occurs when the claim becomes enforceable, i.e., when all elements of the [malpractice] can be truthfully alleged in a complaint."

In our view, the majority's reliance on *Ackerman v Price Waterhouse* (84 NY2d 535) is misplaced. In that case, the Court of Appeals concluded that the statute of limitations began to run on the date on which the client relied on the work product of the accounting firm, rather than the date on which the client was notified by the Internal Revenue Service of a tax deficiency. The Court wrote, "This is the time when all the facts necessary to the cause of action have occurred and an injured party can obtain relief in court" (*Ackerman v Price Waterhouse, supra* at 541). Here, plaintiff could not plead the elements of negligence or the amount of damages sought on the date the judgment was filed. Plaintiff does not contend that the cause of action accrued on the date on which she discovered the malpractice, as suggested by the majority; rather, she contends only that it accrued when she was able to plead the elements of the cause of action. That date, under the facts of this case, is the date of her ex-husband's death. To conclude differently not only necessitates the violation of legal precedent (*see, LaBello v Albany Med. Ctr. Hosp., supra; Ackerman v Price Waterhouse, supra*), but tramples good old common sense.

We also disagree with the majority's conclusion that the doctrine of continuous representation is not applicable. Even assuming, arguendo, that the statute of limitations expired prior to the commencement of the action, we conclude that it was tolled until plaintiff was notified by defendants that they no longer represented her. It is well settled that, in the context of a legal malpractice action, the doctrine of continuous represen-

tation tolls the statute of limitations only where that representation pertains specifically to the matter in which the attorney committed the alleged malpractice (*see, Glamm v Allen,* 57 NY2d 87, 94). In our view, the facts of this case fit squarely within the Court of Appeals decision in *Shumsky v Eisenstein* (96 NY2d 164). In that case, plaintiffs retained defendant for the specific purpose of commencing an action against a home inspector for breach of contract. Defendant admitted that he was "retained specifically to 'investigate, research and *prosecute* [plaintiffs'] claim against [the home inspector]' " (*Shumsky v Eisenstein, supra* at 170). In March 1994 the statute of limitations expired on the breach of contract action against the home inspector. In October 1996 plaintiffs inquired about the status of their breach of contract claim, and in December 1997 they commenced a legal malpractice action against defendant. The Court agreed with plaintiffs that, although the statute of limitations on the underlying breach of contract action expired in March 1994 and the legal malpractice action accrued at that time, the doctrine of continuous representation tolled the statute of limitations on the legal malpractice action until at least October 1996, when plaintiffs asked defendant about the status of their breach of contract action (*see, Shumskey v Eisentein, supra* at 169-170). The Court wrote, "While it is true that this Court and others have held that a professional's failure to take action or provide services necessary to protect a client's * * * interests does not, standing alone, constitute representation * * * for purposes of tolling the Statute of Limitations * * *, we reject defendant's contention, and the Appellate Division's conclusion, that the instant matter falls within that category of cases" (*Shumsky v Eisenstein, supra* at 168). The Court distinguished *Young v New York City Health & Hosps. Corp.* (91 NY2d 291, 296-297) and *Ashmead v Groper* (251 AD2d 716) on the ground that the plaintiffs in those cases were unaware of any need for further professional services and there was no mutual understanding between the respective plaintiffs and the professional that further services were needed in connection with the specific subject matter out of which the malpractice arose. The Court wrote in *Shumsky* (*supra* at 169) that plaintiffs "were acutely aware of such need for further representation on the specific subject matter underlying the malpractice claim and there was a mutual understanding [between the parties] to that effect. Moreover, the record indisputably establishe[s] that plaintiffs were left with the reasonable impression that defendant was, in fact, actively addressing their legal needs." The Court further wrote that " 'continuous representation' in the context of a legal malpractice action does

not automatically come to an end where, as here, pursuant to a retainer agreement, an attorney and client both explicitly anticipate continued representation" (*Shumsky v Eisenstein, supra* at 170).

In the instant case, plaintiff signed a written retainer agreement providing that the law firm would "diligently and faithfully attempt to reach a settlement and/or to prosecute this matter to the best of our abilities and in any manner which is in your best interests." On the date of the stipulation of settlement in the divorce action, plaintiff agreed both orally and in writing to the stipulation, which included defendant's representation that a QDRO would be prepared and filed with the final judgment of divorce or shortly thereafter. Therefore, plaintiff and defendants were aware of the need for further representation on the subject matter underlying the malpractice; plaintiff and defendants had a mutual understanding to that effect; and plaintiff was left with the reasonable impression that defendant would prepare and file the QDRO, thereby addressing her legal needs.

In conclusion, we submit that the majority erroneously concludes that the statute of limitations began to run at the time the judgment of divorce was filed. There were no ascertainable damages and no act of malpractice at that time, and thus the cause of action could not have accrued for statute of limitations purposes. Moreover, under these facts, the doctrine of continuous representation tolled the statute of limitations until such time as defendants notified plaintiff that they no longer represented her. Therefore, we would reverse the order, deny defendants' motion, and reinstate the complaint. Present—Hayes, J.P., Scudder, Burns, Gorski and Lawton, JJ.