■ MARTHA DUHAMEL, Now Known as MARTHA MACMILLAN, Respondent, v KEVIN DUHAMEL, Appellant. (Appeal No. 1.) [771 NYS2d 476]—Appeal from an amended order of the Supreme Court, Monroe County (David D. Egan, J.), entered July 3, 2001. The order denied defendant's motion for a declaration that plaintiff's application for the execution of a qualified domestic relations order is time-barred and granted plaintiff's application.

Appeal from an order of the Supreme Court, Monroe County (David D. Egan, J.), entered December 26, 2002. The order,

insofar as appealed from, upon renewal denied defendant's motion seeking a declaration that plaintiff's application for the execution of qualified domestic relations order is time-barred and granted plaintiff's application.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously affirmed without costs.

Memorandum: Supreme Court, upon renewal, properly denied defendant's motion seeking a declaration that plaintiff's application for the execution of a qualified domestic relations order (QDRO) is time-barred. The parties were married in 1973 and divorced in 1986. Pursuant to a separation agreement (agreement) that was incorporated but not merged in the judgment of divorce, plaintiff is entitled to share in defendant's employer-provided retirement plan and savings and investment plan. Plaintiff's marital, pro rata share of those assets is set forth in the agreement, and the parties further agreed that a QDRO would be submitted to the court in accordance with the Retirement Equity Act of 1984 (Pub L 98-397, 98 US Stat 1426). In February 2001, plaintiff's counsel sought information from defendant for the purpose of preparing a QDRO, but defendant refused to provide such information, maintaining that, because of the 16-year interval between the divorce and the proposed submission of the QDRO, its submission is barred by the six-year statute of limitations (see CPLR 213 [1], [2]).

CPLR 201 provides that "[a]n action . . . must be commenced within the time specified in this article unless a different time is prescribed by law . . ." (emphasis added). The submission of a QDRO to the court, however, is not the equivalent of the commencement of an "action." Vested rights in a retirement or pension plan are considered marital property subject to distribution in a divorce action to the extent that they derive from the participant's employment after the marriage and before the commencement of the divorce action. An award of a portion of a former spouse's retirement or pension plan constitutes the equitable distribution of marital property (see Majauskas v Majauskas, 61 NY2d 481, 485-486 [1984]).

Retirement and pension plans, however, are governed by federal law, specifically, the Employee Retirement Income Security Act of 1974 ([ERISA] 29 USC § 1001 et seq.). ERISA defines a QDRO as "a domestic relations order . . . which creates or recognizes the existence of an alternate payee's right to . . . receive all or a portion of the benefits payable with respect to a participant under a plan" (§ 1056 [d] [3] [B] [i]). ERISA generally prohibits pension plan administrators from assigning plan benefits (see § 1056 [d] [1]), except in accordance with specific

conditions under which plan benefits can be paid to someone other than the participant (*see* § 1056 [d] [3]). If an order complies with those conditions, it qualifies as a QDRO, capable of designating an alternate payee of some or all of the funds in a retirement or pension plan (*see* § 1056 [d] [3] [B]; *McCoy v Feinman,* 99 NY2d 295, 304 [2002]).

A QDRO obtained pursuant to a separation agreement "can convey only those rights . . . which the parties [agreed to] as a basis for the judgment" (*McCoy,* 99 NY2d at 304; *see Von Buren v Von Buren,* 252 AD2d 950, 950-951 [1998]; *De Gaust v De Gaust,* 237 AD2d 862, 862-863 [1997]). A court may not include in a QDRO rights not provided for in the underlying stipulation or written agreement (*see Von Buren,* 252 AD2d at 951; *De Gaust,* 237 AD2d at 863). Therefore, because a QDRO is derived from the bargain struck by the parties at the time of the judgment of divorce, there is no need to commence a separate "action" in order for the court to formalize the agreement between the parties in the form of a QDRO.

Contrary to defendant's contention, neither our decision in *McCoy* (291 AD2d 799 [2002]) nor the Court of Appeals' affirmance compels a different result. In *McCoy,* a legal malpractice action, the former husband died before a QDRO had been entered. This Court determined that the date of the injury for statute of limitations purposes was the date of the entry of the judgment of divorce (291 AD2d at 800). Our decision in *McCoy* does not limit plaintiff's time to have a QDRO reflective of the parties' agreement executed and entered. In affirming our order, the Court of Appeals agreed that the statute of limitations had expired. The Court emphasized that neither the stipulation of settlement nor the divorce judgment gave the plaintiff the right to the survivor benefits she sought and viewed the act of malpractice as having occurred when the attorney failed to set forth what pre-retirement death benefits had been reserved or negotiated for his client at the time that the matter was settled on the record (*see McCoy,* 99 NY2d at 305). Because a QDRO can contain only the rights reflected in the settlement, and no right to the pre-retirement death benefit of the plaintiff's husband was set forth in any stipulation or judgment, the Court of Appeals in *McCoy* determined that the malpractice action accrued, at the latest, on the date of the judgment, and not upon the attorney's continuing failure to reduce the parties' negotiated agreement to a QDRO (*see id.* at 303, 305). That determination does not limit the amount of time plaintiff herein had to reduce the agreement relating to her share of her former husband's pension to a writing that meets the formalities of a

QDRO pursuant to ERISA. Present—Green, J.P., Scudder, Gorski, Lawton and Hayes, JJ. [*See* 194 Misc 2d 100.]